IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 20-cr-00271-DDD

UNITED STATES OF AMERICA,

    Plaintiff,

v.

FELIX MISSEAL ALVA

    Defendant.

## PLEA AGREEMENT

The United States of America, by and through Matthew T. Kirsch, Acting United States Attorney for the District of Colorado, and Dorothy DiPascali, Special Assistant United States Attorney, and the defendant, Felix Misseal Alva, personally and by counsel, David Kraut, hereby submit the following Plea Agreement pursuant to D.C.COLO.LCrR 11.1.

### I.  AGREEMENT

    *A.  Defendant's Plea of Guilty:*

The defendant agrees to plead guilty to Count 1 of the Indictment, charging a violation of 18 U.S.C. § 922(g)(5) (possession of a firearm by an alien present in the United States illegally and unlawfully). The defendant further agrees to forfeit property pursuant to 18 U.S.C. § 924(d), and to waive his appellate rights as set forth below.

    *B.  Government's Obligations:*

This agreement is made pursuant to Fed.R.Crim.P.11(c)(1)(A). In exchange for the

defendant's plea of guilty and waiver of certain appellate rights, the United States agrees to (1) move, at sentencing, to dismiss Count Two of the Indictment, charging a violation of 8 U.S.C. § 1326(a) (illegal re-entry of a previously deported alien), (2) not pursue any additional charges against the defendant arising from conduct known to the government at the time of this agreement, (3) recommend a sentence of no more than 96 months imprisonment, and (4) recommend the Court give the defendant full credit for acceptance of responsibility, unless the defendant engages in conduct that qualifies for the obstruction of justice enhancement under U.S.S.G. §§ 3C1.1 and 3E1.1, comment (note 4) between the time of the guilty plea and sentencing.

Should the plea of guilty be vacated on the motion of the Defendant, the United States may, in its sole discretion, move to reinstate any or all of the counts dismissed pursuant to this agreement.

### C.    Defendant's Waiver of Appeal:

The defendant is aware that 18 U.S.C. § 3742 affords the right to appeal the sentence, including the manner in which that sentence is determined. Understanding this, and in exchange for the concessions made by the government in this agreement, the defendant knowingly and voluntarily waives the right to appeal any matter in connection with this prosecution, conviction, or sentence unless it meets one of the following criteria:

(1) the sentence exceeds the maximum penalty provided in the statute of conviction;

(2) the court imposes a sentence above the guideline range applicable to an offense level of 12, and (A) the Court applies the cross-reference at U.S.S.G. §2K2.1(c)(1) as discussed in the parties' estimated advisory guideline calculation below, in which case the defendant may appeal only that application; or (B) the Court does not apply the cross reference but applies the 4-level enhancement at U.S.S.G. §2K2.1(b)(6)(B), in which case the defendant may appeal only that application;

(3) the Court imposes a sentence that is an upward variance from the guideline range as ultimately calculated by the Court; or

(4) the government appeals the sentence imposed.

If any of these four criteria apply, the defendant may appeal on any ground that is properly available in an appeal that follows a guilty plea, except as limited above.

The defendant also knowingly and voluntarily waives the right to challenge this prosecution, conviction, or sentence in any collateral attack (including, but not limited to, a motion brought under 28 U.S.C. § 2255). This waiver provision does not prevent the defendant from seeking relief otherwise available in a collateral attack on any of the following grounds: (1) the defendant should receive the benefit of an explicitly retroactive change in the sentencing guidelines or sentencing statute; (2) the defendant was deprived of the effective assistance of counsel; or (3) the defendant was prejudiced by prosecutorial misconduct.

### D.     *Forfeiture and Abandonment of Right, Title, and Claim to Seized Property*:

The defendant admits to the forfeiture allegation contained in the Indictment. The defendant further agrees that any property subject to forfeiture under 18 U.S.C. § 924(d), seized from the defendant and currently in the custody and/or control of the United States or other law enforcement agency, was properly seized and that such property constitutes evidence, contraband, or fruits of the crime to which the defendant is pleading guilty. The government will not seek to forfeit the white 2014 Jeep Cherokee, VIN 1C4RJFBT9EC559857. As such, the defendant will relinquish all claims, title and interest the defendant has in such property to the United States of America with the understanding and consent that the U.S. Bureau of Alcohol, Tobacco and Firearms (ATF), or other appropriate agency, will cause the property described to be destroyed forthwith without further obligation or duty whatsoever owing to the defendant or any other person.

The United States anticipates that the defendant will state under penalty of perjury that he abandons all right and claim to this property.

Forfeiture of the defendant's property shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty this Court may impose on the defendant in addition to forfeiture.

## II. ELEMENTS OF THE OFFENSE

The parties agree that the elements of the offense to which the defendant will plead guilty, possession of a firearm by an alien present in the United States illegally and unlawfully, in violation of 18 U.S.C. § 922(g)(5), are as follows:

*First:*   The defendant knowingly possessed a firearm;

*Second:*   At the time the defendant possessed the firearm, the defendant was an alien present in the United States illegally or unlawfully;

*Third:*   At the time the defendant possessed the firearm, the defendant knew he was an alien present in the United States illegally or unlawfully;

*Fourth:*   Before the defendant possessed the firearm, the firearm had moved at some time from one state to another.

**Note**: The term "*alien*" means not a citizen or national of the United States. The term "*firearm*" means any weapon that will or is designed to or may readily be converted to expel a projectile by the action of an explosive.

## III. STATUTORY PENALTIES

The maximum statutory penalty for a violation of 18 U.S.C. § 922(g)(5) is not more than 10 years of imprisonment; not more than a $250,000 fine, or both; not more than 3 years of supervised release; and a $100 special assessment fee.

If a term of probation or supervised release is imposed, any violation of the terms and/or conditions of supervision may result in an additional term of imprisonment.

## IV.  COLLATERAL CONSEQUENCES

This felony conviction may cause the loss of civil rights including, but not limited to, the rights to possess firearms, vote, hold elected office, and sit on a jury. The conviction may also result in a violation of the conditions of the defendant's state parole or probation. If the defendant is an alien, the conviction may cause the defendant to be deported and removed from the United States, to be denied admission to the United States, and to be denied citizenship.

## V.  STIPULATION OF FACTS

The parties agree that there is a factual basis for the guilty plea that the defendant will tender pursuant to this plea agreement.  That basis is set forth below.  Because the Court must,  as part of its sentencing methodology, compute the advisory guideline range for the offense of conviction, consider relevant conduct, and consider the other factors set forth in 18 U.S.C. § 3553, additional facts may be included below which are pertinent to those considerations and computations.  To the extent the parties disagree about the facts set forth below, the stipulation of facts identifies which facts are known to be in dispute at the time of the execution of the plea agreement.

This stipulation of facts does not preclude either party from hereafter presenting the Court with additional facts which do not contradict facts to which the parties have stipulated and which are relevant to the Court's guideline computations, to other 18 U.S.C. § 3553 factors, or to the Court's overall sentencing decision.

The parties stipulate and agree as follows:

The defendant, born in Mexico, is not a national or citizen of the United States. The defendant has no claim to lawful status in the United States. During all dates relevant to these charges, the

defendant knew he was an alien in the United States illegally and unlawfully. The defendant was removed from the United States to Mexico on February 5, 2010. He unlawfully returned to the United States and was recently encountered during the course of an investigation into a shooting that took place in downtown Denver on May 30, 2020.

On May 30, 2020, demonstrations were taking place across the United States, including in downtown Denver, Colorado, in response to George Floyd's death while in police custody in Minneapolis, Minnesota. Mr. Floyd, an African-American, died on May 25, 2020 after a white police officer used force during his arrest. On May 30, Denver Police Department (DPD) Detective Robert Foster was working in a plain-clothes capacity conducting physical surveillance of the ongoing demonstrations. At approximately 2108 hours, as Detective Foster was walking through the east/west alley on the south side of 1450 Washington Street, in Denver, Colorado, a white Jeep Grand Cherokee ("the Jeep") stopped near him on Washington Street. Detective Foster stood on the passenger side of the Jeep, approximately ten feet from the vehicle. The Jeep's front passenger window was completely rolled down, and Detective Foster observed Mr. Alva as the front passenger of the vehicle.

Through the open window, Mr. Alva looked at Detective Foster and stated, "Hey homie!" He then stated, "This ain't no peaceful protest, fuck twelve!" and referenced "pigs" as well. "Twelve" and "pigs" are both terms used to reference the police. Mr. Alva then produced the Hi Point .45 caliber handgun identified in the Indictment and held it down beneath the window, tapping the muzzle on the side of the Jeep's passenger door. Mr. Alva repeated, "This ain't no peaceful protest." Mr. Alva had been drinking alcohol and his speech was noticeably slurred throughout his interaction with Det. Foster. Mr. Alva did not know that Det. Foster was a police officer.

Flying above downtown Denver at this time were two helicopters: a news helicopter and a

Denver Police Department helicopter ("Air1"). Both were visible from various locations on the ground, but the news helicopter was flying at a higher altitude and was at a further distance from 1450 Washington Street than Air1 at the time of the incidents described here. Air1 was flying approximately 1,400 feet above street level and was circling the area in downtown Denver where the demonstrations were occurring.[1] Air1 was continuously moving. Mr. Alva denies knowledge of the helicopters' locations and affiliations.

Mr. Alva pointed with his left hand upwards and said something. Det. Foster believes Mr. Alva said, "this is for them," referencing the police helicopter. Mr. Alva asserts he said, "this is for him," referencing George Floyd. An unidentified pedestrian urged Mr. Alva to put the gun away. Mr. Alva replied to the pedestrian, "Nah fuck that, this is for [them/him][2]!" before firing upwards into the air. Detective Foster turned and began to run westbound out of fear of being shot and killed. He heard approximately six to ten gunshots. Two additional DPD officers were on the east side of the Jeep during this shooting and also observed the defendant fire a gun from the passenger window as the Jeep sped off southbound. Mr. Alva did not see these officers.

No bullet struck Air1 or the news helicopter. The shooting did not interfere with the operation of either helicopter. No person was physically injured by Mr. Alva's actions.

Through the use of license plate reader technology and images obtained by High Activity Location Observation (HALO) cameras, law enforcement was able to identify the Jeep, which is registered to the defendant's wife, and locate the Jeep at the defendant's address in Aurora, Colorado.

---

[1] The defendant stipulates that Air1 is an aircraft that was within the special aircraft jurisdiction of the United States at the time of the events described herein.

[2] The parties have the same dispute regarding Mr. Alva's use of the word "them" vs. "him" with respect to this statement.

On June 2, 2020, the Jeep was impounded and searched pursuant to a warrant. Inside the vehicle, officers found two Corona beer bottle caps, one empty Corona beer bottle, protest signs, and fireworks, as well as a pair of sandals and a fishing rod belonging to the defendant.

On June 4, 2020, a search warrant was executed at the defendant's home. In a shed in the defendant's backyard, officers found the Hi-Point Model JHP, .45 caliber handgun with serial number 4129745, as well as a handgun holster, handgun cleaning kit, two pistol magazines, a magazine holster, and a gun box. The Hi-Point JHP was later test-fired and functioned as designed. It was examined and determined to have been manufactured outside the state of Colorado, therefore it had moved from one state to another before June 4, 2020.

Mr. Alva's cellphone was also searched pursuant to a search warrant. Multiple videos taken with Mr. Alva's phone the night of the shooting depict Mr. Alva participating in protest activity through the passenger window of the Jeep.

## VI. ADVISORY GUIDELINE COMPUTATION AND 18 U.S.C. § 3553 ADVISEMENT

The parties understand that the United States Sentencing Guidelines are only advisory, but represent the starting point and benchmark for sentencing. The parties understand that the imposition of a sentence in this matter is governed by 18 U.S.C. § 3553. In determining the particular sentence to be imposed, the Court is required to consider seven factors. One of those factors is the sentencing range computed by the Court under advisory guidelines issued by the United States Sentencing Commission. To aid the Court in this regard, the parties set forth below their estimate of the advisory guideline range called for by the United States Sentencing Guidelines (USSG). To the extent that the parties disagree about the guideline computations, the recitation below identifies the matters which are in dispute.

The Guideline calculation below is the good-faith estimate of the parties, but it is only an

estimate. The parties understand that the government has an independent obligation to assist the Court in making an accurate determination of the correct guideline range. To that end, the government may make legal or factual arguments that affect the estimate below.

    A.    Without a cross-reference, the applicable guideline is §2K2.1(a)(6) with a base offense level of **14**.

        a.  Specific offense characteristics:

           (i)  **Government's Estimate: +4** because the defendant used or possessed the firearm in connection with another felony offense.[3] §2K2.1(b)(6)(B).

           (ii)  **Defendant's Estimate**: **None**.

    B.    **Cross Reference based on a violation of 18 USC §32(a)(5) and/or (a)(8):** If the defendant used or possessed the firearm cited in the offense of conviction in connection with the commission of another offense, apply §2X1.1 in respect to that other offense. §2K2.1(c)(1).[4]

        a.  **Government's Estimate**: The offense level that applies for attempted interference with flight crew, if the offense involved intentionally endangering an aircraft is **30**. §2A5.2(a)(1)(A).

           (i)  Specific Offense Characteristics: **+5** because a firearm was discharged. §2A5.2(b)(1).

        b.  **Defendant's Estimate**: None. The defendant contests the application of §2K2.1(c)(1). However, if the Court finds that §2K2.1(c)(1) applies

---

[3] Although not charged in the present indictment, the Government asserts that the shooting violated 18 USC §32(a)(5) and/or (a)(8), felonies punishable by up to 20 years of imprisonment. Alternatively, the government asserts that the conduct violated Colorado Revised Statute (CRS) §18-3-206, felony menacing. "A person commits the crime of menacing if, by any threat or physical action, he or she knowingly places or attempts to place another person in fear of imminent serious bodily injury. Menacing is a class 3 misdemeanor, but it is a class 5 felony if committed: (a) By the use of a deadly weapon." CRS §18-3-206. Mr. Alva disputes these claims and asserts his conduct on May 30, 2020 did not constitute a "felony offense" as that term is used in USSG §2K2.1(b)(6)(B) and defined at §2K2.1, comment. (n.14(C)).

[4] The parties agree that the three-level decrease contemplated by §2X1.1(b)(1) should not apply if the Court uses §2X1.1 to determine the applicable guideline range.

based on a violation of 18 USC § 32(a)(5) and/or (a)(8), the defendant contests the application of §2A5.2(a)(1)(A).

If, over Mr. Alva's objection, the Court applies §2K2.1(c)(1) based on a finding that Mr. Alva committed an offense involving conduct that recklessly endangered the safety of an aircraft, the offense level would be **18** pursuant to §2A5.2(a)(2)(A). Under this circumstance, the offense level would increase to **24** because a firearm was discharged. §2A5.2(b)(1).[5]

C. Total Offense Level:

    a. **Government's Estimates**

        (i) Without Cross Reference pursuant to §2K2.1(c)(1)(A) – **18**

        (ii) With Cross Reference pursuant to §2K2.1(c)(1)(A) – **35**[6]

    b. **Defendant's Estimates**

        (i) Without Cross Reference pursuant to §2K2.1(c)(1)(A) – **14**

        (ii) With Cross Reference pursuant to §2K2.1(c)(1)(A) and finding that Mr. Alva's conduct was reckless – **24**[7]

**Acceptance of Responsibility**: The defendant should receive an adjustment for acceptance of responsibility under §3E1.1. The resulting total offense level therefore would be **15** or **32** by the government's calculation (**-3** pursuant to §3E1.1(b)), or **12 or 21** by the

---

[5] By offering this estimate, Mr. Alva does not waive any legal or factual argument he may present at or before sentencing regarding the inapplicability of §2A5.2. This estimate is included only to alert the Court to a potential sentencing position Mr. Alva may take if, over Mr. Alva's objection, the Court uses §2A5.2 to determine the offense level. The parties recognize that Mr. Alva will assert that his conduct was negligent as a basis for his argument that the Cross Reference should not apply.

[6] The Government asserts that the circumstances of this case satisfy both §2K2.1(b)(6)(B) and §2K2.1(c)(1). Since application of §2K2.1(c)(1) results in a greater offense level, the Government asserts that the offense level should be determined based on §2K2.1(c)(1), §2X1.1, and §2A.5.2. *See* §2K2.1, comment. (n.14(E)(i)).

[7] Mr. Alva asserts that the circumstances of this case do not satisfy §2K2.1(b)(6)(B) or §2K2.1(c)(1).

defendant's calculation (**-2** pursuant to §3E1.1(a) or **-3** pursuant to §3E1.1(b)).

**Criminal History Category**: The parties understand that the defendant's criminal history computation is tentative. The criminal history category is determined by the Court based on the defendant's prior convictions. Based on information currently available to the parties, it is estimated that the defendant's Criminal History Category would be **I**. Assuming the criminal history facts known to the parties are correct, the career offender/criminal livelihood/armed career criminal adjustments would not apply.

**Imprisonment**:

> **Government's Estimate:** The advisory guideline range of imprisonment resulting from an offense level of **32** and the above criminal history category is **121- 151** months. The advisory guideline range of imprisonment resulting from an offense level of **15** and the above criminal history category is **18-24** months. However, in order to be as accurate as possible, with the criminal history category undetermined at this time, the offense level estimated above could conceivably result in an advisory guideline range from **18-120** months.[8]
>
> **Defendant's Estimate:** The advisory guideline range of imprisonment resulting from an offense level of **12** and the above criminal history category is **10-16** months. The advisory guideline range of imprisonment resulting from an offense level of **21** and the above criminal history category is **37-46** months. However, in order to be as accurate as possible, with the criminal history category undetermined at this time, the offense level estimated above could conceivably result in a range from **10-96**

---

[8] The guideline imprisonment range is limited by the 120-month statutory maximum for the offense of conviction.

11

months.

In any event, the guideline range would not exceed the statutory maximum applicable to the count of conviction, in this case, **120 months.**

**Fine**: Pursuant to guideline § 5E1.2, assuming an estimated offense level of **32**, the fine range for this offense would be $35,000 to $350,000, plus applicable interest and penalties. At offense level of **12**, the fine range for this offense would be $5,500 to $55,000, plus applicable interest and penalties.

**Supervised Release**: The guideline range of supervised release under §5D1.2 is at least one year but not more than three years.

The parties understand that although the Court will consider the parties' guideline estimate, the Court must make its own determination of the applicable guideline range. In doing so, the Court is not bound by the position of any party.

The parties understand that the Court is free, upon consideration and proper application of all 18 U.S.C. § 3553 factors, to impose that reasonable sentence which it deems appropriate in the exercise of its discretion and that such sentence may be less than that called for by the advisory guidelines (in length or form), within the advisory guideline range, or above the advisory guideline range up to and including imprisonment for the statutory maximum term, regardless of any computation or position of any party on any 18 U.S.C. § 3553 factor.

## VII.   ENTIRE AGREEMENT

This document states the parties' entire agreement. There are no other promises, agreements (or "side agreements"), terms, conditions, understandings, or assurances, express or implied. In entering this agreement, neither the government nor the defendant has relied, or is relying, on any

terms, promises, conditions, or assurances not expressly stated in this agreement.

Date: 3-29-2021  _____
                  Felix Misseal Alva
                  Defendant

Date: _____      David Kraut  Digitally signed by David Kraut
                                Date: 2021.04.06 10:37:57 -06'00'
                  _____
                  David Andrew Kraut
                  Attorney for the Defendant

Date: _____      _____
                  Dorothy DiPascali
                  Special Assistant United States Attorney

13